# IN THE COURT OF APPEALS OF IOWA

No. 17-1629
Filed March 6, 2019

**LYNCH LIVESTOCK, INC. and NATIONWIDE AGRIBUSINESS INS. CO.,**
　　Plaintiffs-Appellants,

**vs.**

**KENNETH BURSELL,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

　　Lynch Livestock appeals a district court order affirming final agency action in a workers' compensation proceeding. **REVERSED AND REMANDED WITH INSTRUCTIONS.**


　　Jeffrey W. Lanz of Huber, Book, Lanz, McConkey & Finch, P.L.L.C., West Des Moines, for appellant.

　　Robert M. Livingston and Rick D. Crowl of Stuart Tinley Law Firm LLP, Council Bluffs, for appellee.


　　Heard by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

This appeal arises out of a drawn-out workers' compensation proceeding. Lynch Livestock appeals from the order of the district court affirming the agency's decision that Lynch Livestock should pay certain medical expenses incurred by Kenneth Bursell for treatment of a work-related injury. On appeal, Lynch Livestock contends it was error for the agency to order Lynch Livestock to pay for the medical expenses.

I.

To fully address the issue of whether Lynch Livestock should have to pay the challenged medical expenses, some background is necessary. This is the second time the parties have been before this court regarding Bursell's workers' compensation claim. In the first appeal, this court reviewed an alternate-medical-care decision. *See Lynch Livestock, Inc. v. Bursell*, No. 14-1133, 2015 WL 2394143, at *1 (Iowa Ct. App. May 20, 2015). Our prior opinion recited the relevant facts and procedural posture as follows:

> In December 2008, Bursell sustained a sprained left ankle while employed with Lynch Livestock, Inc. The employer accepted the compensability of injury and paid for the care Bursell selected. Bursell underwent two tarsal tunnel decompressions to alleviate the pain, one in January and one in July 2009. When the pain in Bursell's ankle did not resolve, he was referred to John E. Cook, M.D., medical director of Siouxland Surgery Center Pain Clinic. The employer accepted the referral to Dr. Cook and paid for the treatment provided, including injections to control pain. Bursell was diagnosed with complex regional pain syndrome, and Dr. Cook recommended he undergo a laparoscopic lumbar sympathectomy for long-term relief and resolution of his pain, referring him to Dr. Kelly, a vascular surgeon. On February 11, 2010, Dr. Patrick Kelly, M.D., recommended conservative treatment, opining a lumbar sympathectomy would be a "last ditch effort/option." The employer had Bursell evaluated by other physicians who concluded Bursell does not have complex regional pain syndrome and would not

benefit from the sympathectomy. Instead, these physicians recommended conservative treatment including physical therapy and psychiatric referrals.

When the employer did not authorize the sympathectomy, Bursell filed an application for alternate medical care on April 7, 2010. The matter came before the deputy workers' compensation commissioner on April 19, 2010. In granting the alternate care, the deputy commissioner concluded Dr. Cook's opinion recommending the surgery was "reasonable and necessary." The deputy commissioner ordered the employer to "provide and pay for the surgery recommended by Dr. Cook including any referrals he makes and any medication he prescribes to treat [Bursell's] work injury."

The employer filed a petition for judicial review with the district court on June 16, 2010. After holding oral arguments, the district court issued its decision on June 16, 2014, reversing the agency's decision to grant the treatment recommended by Dr. Cook. The district [court] concluded the agency failed to apply the correct legal test to Bursell's alternate care request as the agency failed to decide whether the care authorized by the employer was "unreasonable." The district court found the agency's decision wholly unjustified and reversed the agency's order.

*Id.* (footnote omitted).

In our prior opinion, we affirmed the district court's judicial-review decision but remanded the case to the district court for remand to the agency to apply the correct legal standard to the petition for alternate medical care. *See id.* at *4. In our prior opinion, we also noted the issue of who bore responsibility for payment of the medical treatment was still at issue:

Counsel for the employer explained at oral argument that things occurred in the intervening time period that are not part of our record. Counsel did explain that the sympathectomy Bursell requested in this case was in fact performed before the case was decided on judicial review. While this would appear to render this appeal moot, as Bursell has already received the medical care he was requesting, counsel asserted the fighting issue that remains is who is responsible for paying for that medical treatment. If the medical care was correctly ordered as part of the alternate medical care decision—i.e., the care offered by the employer was unreasonable—the employer is responsible for the cost. If, however,

the medical care was not correctly ordered as part of the alternate medical care decision, the treatment performed would be considered unauthorized treatment, and in order to require the employer to pay for this treatment, Bursell must then prove the treatment was reasonable and beneficial under the case of *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 206 (Iowa 2010).

*Id.* at *1 n.1.

In August 2016, the agency issued its remand decision in the alternate-medical-care proceeding. The agency denied the petition for alternate medical care, concluding:

> Dr. Kelly recommended surgery only after conservative care had been exhausted and failed. The record indicates claimant did not undergo the conservative care recommended by Dr. Blow, and other physicians. As a result, claimant has failed to carry his burden of proof the care authorized by the employer has not been effective, that the care is inferior or less extensive, or that the care recommended by defendants is unreasonable.

Bursell did not appeal the denial of his petition for alternate medical care.

While the alternate-medical-care case was wending its way through the agency and the courts, the parties conducted an arbitration hearing regarding weekly, medical, and penalty benefits. In December 2014, the agency issued its appeal decision in the arbitration case. The agency concluded Bursell was entitled to medical benefits for the treatment that ultimately was unauthorized following our remand in the alternate-medical-care case:

> Given that Dr. Rash, Dr. Ung, Dr. Cook, and Dr. Kelly were authorized at some point, the decision to de-authorize them is an interference in the professional judgment of authorized treating physicians and claimant is entitled to have those bills paid.
>
> Further the care provided by Dr. Rash, Dr. Ung, Dr. Cook, and Dr. Kelly provided pain relief, pain management, diagnosis of CRPS, and treatment of CRPS.

"[T]he duty of the employer to furnish reasonable medical care supports all claims for care by an employee that are reasonable under the totality of the circumstances, even when the employee obtains unauthorized care, upon proof by a preponderance of the evidence that such care was reasonable and beneficial." *Bell Bros. Heating v. Gwinn*, 779 N.W.2d 193 (Iowa 2010).

The substantial evidence supports a finding that the care provided by Dr. Rash, Dr. Ung, Dr. Cook, and Dr. Kelly was reasonable and beneficial. Dr. Fitzgibbons, whom [t]he defendants argue took the place of all the previous doctors, began to see claimant on February 11, 2010, for an IME and then claimant had his first visit with Dr. Fitzgibbons for actual treatment November 20, 2010. Claimant was seen by Dr. Kelly on June 2, 2010, who performed a laparoscopic lumbar sympathectomy to ease the left leg pain. According to the medical reports, it provided some pain relief. On August 3, 2010, Dr. Ung performed a third tarsal tunnel surgery and in December 1, 2010, Dr. Cook performed facet block injections. Dr. Cook provided additional pain management. While it is unfortunate claimant did not have a better result, at the time, the care was reasonable and beneficiary.

Dr. Fitzgibbons did not perform the surgeries or administer the injections. He took no exceptions to the care that was provided Dr. Ung, Dr. Cook, or Dr. Kelly. There appears to no specific mention of Dr. Rash's care.

When Dr. Fitzgibbons saw claimant again on January 20, 2011, he did not provide any additional care but instead recommended claimant stop having surgeries and possibly any additional treatment. In a sense, Dr. Fitzgibbons recommended no care. Thus the alternative to the care provided by Dr. Rash, Dr. Ung, Dr. Cook and Dr. Kelly was no treatment. In light of that, the so called unauthorized treatment was more reasonable and beneficiary [sic] than the no treatment.

Lynch Livestock sought rehearing on the question of who was responsible for paying for the unauthorized care. In January 2015, the agency denied the petition for rehearing.

Lynch Livestock sought judicial review of the agency decision. In its petition for judicial review, Lynch Livestock argued the award of medical benefits for the unauthorized care was contrary to the controlling standard set forth in *Bell*

*Brothers.* *See* 779 N.W.2d at 206. The district court agreed with the substance of the legal argument. The district court concluded substantial evidence did not support the agency's finding that the unauthorized care was reasonable and beneficial within the meaning of *Bell Brothers.* Thus, the district court concluded, Lynch Livestock was not liable for medical expenses incurred: "Lynch is not liable for medical expenses incurred because upon application of the correct standard, conservative care was not unreasonable and undergoing the sympathectomy was unreasonable." The district court's decision was internally inconsistent, however. After concluding Lynch Livestock was not liable, the district court also concluded Bursell should not be "liable for medical expenses incurred because at the time Bursell underwent the sympathectomy, alternate medical care was authorized by the commissioner and employees are not obligated to make sure care authorizations remain in force before accepting care." After concluding that neither party was liable for the medical expenses, the district court nonetheless affirmed the agency's decision imposing the costs on Lynch Livestock. The district court reasoned that, as between the employer and the employee, the employer should bear the responsibility for payment of medical expenses incurred for unauthorized care where the employee sought the care pursuant to an agency decision that was subsequently reversed.

Lynch Livestock timely filed this appeal. Bursell did not file a cross appeal.

II.

This appeal is governed by the Iowa Administrative Procedure Act. *See* Iowa Code section 17A.19 (2010); *Int'l Paper Co. v. Bueker*, No. 08-1536, 2009 WL 1218693, at \*2 (Iowa Ct. App. May 6, 2009). "A district court acts in an

appellate capacity when it exercises its judicial review power." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012); *accord IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 627 (Iowa 2000). "When reviewing a district court's decision 'we apply the standards of chapter 17A to determine whether the conclusions we reach are the same as those of the district court. If they are the same, we affirm; otherwise, we reverse.'" *Neal*, 814 N.W.2d at 518 (quoting *Mycogen Seeds v. Sands*, 686 N.W.2d 457, 464 (Iowa 2004)). "Our review of the commissioner's decision is for errors at law, not de novo." *Robertson/Star Bldg. & Ins. Co. of the State of Pa. v. Coohey*, No. 09-0615, 2009 WL 3775151, at *1 (Iowa Ct. App. Nov. 12, 2009); *accord Day v. R.G. Elder & Son Co.*, No. 00-1724, 2002 WL 21967, at *2 (Iowa Ct. App. Jan. 9, 2002).

Under Iowa workers' compensation law, "the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care." Iowa Code § 85.27(4). However:

> If the employee has reason to be dissatisfied with the care offered, . . . the employer and the employee may agree to alternate care . . . . If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care.

Iowa Code § 85.27(4). Before the agency can authorize alternate care, the employee must show the care offered by the employer was unreasonable. *See Bell Bros.*, 779 N.W.2d at 204.

The responsibility for the costs of alternate care is well-established. If the agency orders alternate care, the employer must cover the cost of the care. *See id.* If the employee seeks unauthorized alternate care, the employer may still be

liable for the medical expenses of such care. *See id.* at 208. The employer is required to cover the cost of unauthorized alternate care if the employee can show that the care is both reasonable and beneficial. *See id.* "[R]easonableness in this analysis includes the quality of the alternative care and the quality of the employer-provided care." *Id.*; *accord Mercy Hosp. Iowa City v. Goodner*, No. 12-0186, 2013 WL 104888, at *17 (Iowa Ct. App. Jan 9, 2013). "[U]nauthorized medical care is beneficial if it provides a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Bell Bros.*, 779 N.W.2d at 206; *accord Verizon Bus. Network Servs., Inc. v. McKenzie*, No. 11-1845, 2012 WL 4899244, at *10 (Iowa Ct. App. Oct. 17, 2012). The court has found that this standard presents a "significant burden to the claimant." *Bell Bros.*, 779 N.W.2d at 206. If the employee does not show that unauthorized alternate care was "reasonable and beneficial" within the meaning of *Bell Brothers*, then the employee is responsible for the medical expenses incurred. *See id.*; *Lynch Livestock*, 2015 WL 2394143, at *1 n.1.

Although this case presents some procedural complexity, the resolution of the ultimate issue is rather straight-forward. Here, Bursell sought and obtained medical treatment that ultimately was unauthorized. Under *Bell Brothers*, Bursell is responsible for the costs of that treatment unless he showed the care was "reasonable and beneficial." The agency found the alternate care was reasonable and beneficial. The district court found there was not substantial evidence supporting the agency's finding that Bursell's unauthorized treatment was "reasonable and beneficial" within the meaning of the controlling law. Bursell did not cross-appeal that conclusion. An issue must be appealed in order to preserve

that issue. *See Beef Products Inc. v. Rizvic*, No. 10-2083, 2011 WL 3688976 at *4 (Iowa Ct. App. Aug. 24, 2011) ("Beef Products asks that we alter and expand the scope of its victory by reversing that portion of the district court's ruling finding substantial evidence existed to support the finding of a work-related rotator cuff injury...We reject Beef Product's claim it was not required to cross appeal to preserve error on this issue."); *In re A.C.*, No. 03-1314, 2003 WL 22455895, at *1 (Iowa Ct. App. Oct. 29, 2003) ("We agree that any claim of error in the dispositional order is not properly before us because no appeal was taken from the order."); *In re J.S.E.*, No. 00-0136, 2000 WL 1027240, at *1 (Iowa Ct. App. July 26, 2000). Independently, we agree with the district court that there was not substantial evidence supporting the finding that Bursell's unauthorized treatment was "reasonable and beneficial." There was no evidence showing the unauthorized care "provide[d] a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Bell Bros.*, 779 N.W.2d at 206. Accordingly, there was no legal basis for the district court to award medical benefits for the unauthorized care.

The district court nonetheless concluded the employer should bear the responsibility for payment of medical expenses. With this we disagree. "The workers' compensation code is a creature of compromise, reflecting the legislature's determination of the proper allocation of rights and responsibilities between employees and employers with respect to work-related injuries." *Hoyt v. Welding Quarries*, No. 14-0800, 2015 WL 576174, at *2 (Iowa Ct. App. Feb. 11, 2015). "[T]he primary purpose of the workers' compensation statute is to benefit the worker and the worker's dependents insofar as the statute permits. Thus the

statute is to be interpreted liberally with a view toward that objective." *Caterpillar Tractor Co. v. Shook*, 313 N.W.2d 503, 506 (Iowa 1981). However, the obligation to interpret the workers' compensation law consistent with its legislative purpose does not give us leave to ignore the plain language of the statute. *See Neal*, 814 N.W.2d at 519; *Kaiser Aluminum & Chem. Sales, Inc. v. Hurst*, 176 N.W.2d 166, 168 (Iowa 1970) (stating even where statute directs the court to construe a chapter liberally to promote its underlying purpose, the court "cannot ignore the plain language" of the statute). "Fidelity to the text best honors the legislature's expressed policy determination." *Hoyt*, 2015 WL 576174, at *2. Here, section 85.27, as interpreted by our cases, apportions the provision of care and the financial responsibility for the same between the employer and the employee. There is no basis for holding the employer responsible for the payment of alternate medical care when the employer resisted the alternate care, when the alternate care was not authorized, and when there is no evidence the alternate care was reasonable and beneficial to the treatment of the work-related injury. We conclude the district court erred in holding to the contrary.

Bursell argues *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759 (Iowa 2016), requires Lynch Livestock to pay for his medical treatment because the treatment was authorized by the agency for a period of time. We disagree. *Ramirez-Trujillo* did not change the general rule established in *Bell Brothers*. 878 N.W.2d at 773 (discussing the rule established in *Bell Brothers* with approval). *Ramirez-Trujillo* affirmed that an employer is not liable for unauthorized care in the absence of proof the unauthorized care was reasonable and beneficial. *See id.* ("[A]n employee generally may recover medical expenses incurred in seeking

unauthorized care upon proving by a preponderance of the evidence the care was reasonable and beneficial under the totality of the circumstances."). In addition, unlike *Ramirez-Trujillo*, the employer in this case never acquiesced to the provision of alternate medical care. Here, Lynch Livestock immediately resisted Bursell's petition for alternate medical care. It continued to resist the request in the agency, on appeal to the district court, and on appeal to this court. *Ramirez-Trujillo* does not support Bursell's position.

Our conclusion that nothing in *Ramirez-Trujillo* altered *Bell Brothers*'s general rule is buttressed by the supreme court's recent decision in *Brewer-Strong v. HNI Corp.* 913 N.W.2d 235 (Iowa 2018). In that case, the court explained as follows:

> Outside of these situations, the employer retains the right to choose the employee's medical care. However, the employer's statutory right to choose medical care for the employee's compensable injuries does not prohibit the employee from seeking his or her own medical care, at his or her own expense, when the employer denies compensability for the injury or the employee "abandons the protections of section 85.27 or otherwise obtains his or her own medical care independent of the statutory scheme." *Bell Bros.*, 779 N.W.2d at 204. Thus, in *Bell Bros.*, we held an employer's duty to furnish reasonable medical care includes those claims for care by the employee that are unauthorized if the employee can prove "by a preponderance of the evidence that such care was reasonable and beneficial" under the totality of the circumstances. *Id.* at 206. "[U]nauthorized medical care is beneficial if it provides a more favorable medical outcome than would likely have been achieved by the care authorized by the employer." *Id.* This burden of proof honors the employer's statutory right to choose the injured employee's medical care under Iowa Code section 85.27(4), yet provides the employee with reimbursement for unauthorized medical care when he or she can show by a preponderance of the evidence that the care was reasonable and beneficial. *Id.* It also aligns with the balance Iowa Code section 85.27(4) seeks to maintain between the employer's right to control medical care and the medical needs of the employee. *See Ramirez-Trujillo*, 878 N.W.2d at 770-71.

*Id.* at 248.

In this case, Bursell sought and obtained alternate medical care. The alternate medical care was disallowed by the agency. Bursell is responsible for the payment of this unauthorized care in the absence of proof the unauthorized care was reasonable and beneficial within the meaning of *Bell Brothers* and *Brewer Strong*. Bursell failed to prove the unauthorized care was reasonable and beneficial within the meaning of our case law. The district court thus erred in holding the employer shall be liable for those expenses.

III.

For the above-stated reasons, we reverse the judgment of the district court and remand to the district court with instructions to remand this matter to the agency for entry of a corrected decision.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**